IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

TAMAR KELLNER,

      Plaintiff,

v.

JOHN F. SCHULTZ, M.D.; JOHN A. LOPEZ, M.D.;
and ASPEN VALLEY HOSPITAL DISTRICT
d/b/a ASPEN VALLEY HOSPITAL

      Defendants.

---

## PLAINTIFF'S COMPLAINT, JURY DEMAND AND CERTIFICATE OF REVIEW

---

Plaintiff, Tamar Kellner, through her attorneys, Leventhal, Brown & Puga, P.C., submits the following Complaint, Jury Demand and Certificate of Review:

## I. CERTIFICATE OF REVIEW

Pursuant to C.R.S. § 13-20-602(3)(a), counsel certifies as follows:

1.      Counsel has consulted with physicians and health care providers with expertise in the areas of the alleged conduct as set forth in Plaintiff's Complaint;

2.      The physicians and health care providers who have been consulted have reviewed all known facts relevant to the allegations of conduct as complained of in Plaintiff's Complaint;

3.      Based upon such facts, these physicians and health care providers have concluded that the filing of the claims against Defendants does not lack substantial justification within the meaning of C.R.S. § 13-17-102(4); and,

4.      The physicians and health care providers who have reviewed all known facts relevant to the allegations of conduct as contained in Plaintiff's Complaint for Damages meet the requirements set forth in C.R.S. § 13-64-401.

## II.  PARTIES AND JURISDICTION

5.      This Honorable Court has jurisdiction as this is a diversity action filed under the provisions of 28 U.S.C. § 1332 by reason of the diversity of the citizenship of the parties and the amount in controversy.  The Plaintiff is a citizen of Maryland.  The Defendants are citizens of Colorado or corporations incorporated under the law of Colorado with their principal places of business in Colorado.  The amount in controversy, without interest and costs, exceeds $75,000.00.

6.      Plaintiff, Tamar Kellner, presently resides at the following address:  3301 Bridle Ridge Lane, Stevenson, Maryland 21153.

7.      At all relevant times, John F. Schultz, M.D. was a physician licensed to practice medicine in the State of Colorado specializing in surgery and, upon information and belief, may have been employed by Defendant Aspen Valley Hospital District d/b/a Aspen Valley Hospital.

8.      Defendant, Aspen Valley Hospital District d/b/a Aspen Valley Hospital had its principal place of business at 0401 Castle Creek Road, Aspen, CO 81611.

9.      At all relevant times, Defendant John A. Lopez, M.D. was a physician licensed to practice medicine in the State of Colorado specializing in neurosurgery.

10.     Plaintiff fully complied with the provisions of C.R.S. § 24-10-109 and, specifically, gave notice pursuant to C.R.S. § 24-10-109 first on September 9, 2009.

11.     Although Plaintiff does not believe that Defendant, John Schultz, M.D., was a public employee for purposes of the Colorado Governmental Immunity Act, C.R.S. § 24-10-101 *et seq.,* in an abundance of caution, notice was given pursuant to C.R.S. § 24-10-109 first on September 9, 2009.

12.     The tortious conduct alleged herein occurred in Pitkin County, Colorado and Mesa County, Colorado.

### III.  GENERAL ALLEGATIONS

13.     Plaintiff incorporates paragraphs 1 through 12 herein by reference.

14.     On March 20, 2009, Tamar Kellner was brought to the Emergency Department at Aspen Valley Hospital District d/b/a Aspen Valley Hospital via ambulance having been dispatched as a traumatic injury including, but not limited to, pain, lost consciousness, and head pain.  Tamar Kellner was noted to be on Coumadin.

15.     Defendant, John Schultz, M.D., was the attending physician during the March 20, 2009 admission at Aspen Valley Hospital District d/b/a Aspen Valley Hospital for Tamar Kellner and the clinical impression for Tamar Kellner was noted to include intracranial hemorrhage.

16.     A CT of the head without contrast was performed on Tamar Kellner at Aspen Valley Hospital District d/b/a Aspen Valley Hospital at approximately 3:05 p.m., with an impression of bilateral convexity subarachnoid hemorrhage, right greater than left, likely post-traumatic, and interpreted by Vernon Chapman, M.D.

17.     At or around 3:46 p.m. on March 20, 2009, it was noted the CT was pushed to St. Mary's and would be discussed with neurosurgery.

18.     Upon information and belief, there was a discussion on March 20, 2009 between John F. Schultz, M.D. and John A. Lopez, M.D. regarding Tamar Kellner.  A decision was made to keep Tamar Kellner in the ICU at Aspen Valley Hospital District d/b/a Aspen Valley Hospital for further care.

19.     At or around 5:39 p.m. on March 20, 2009, John F. Schultz, M.D. noted he had discussed Tamar Kellner's case with neurosurgeon Dr. John A. Lopez and that Dr. Lopez had reviewed Ms. Kellner's CT scan and recommended her anticoagulation be held and/or reversed and that Drs. Schultz and Lopez were both in agreement that Ms. Kellner did not need to be under the direct care of a neurosurgeon at that point.   The plan was for Ms. Kellner to be admitted to the ICU with frequent neuro checks and to have a follow-up CT the next morning.

20.     During the March 20, 2009 hospitalization, neither Tamar Kellner nor her family were ever advised that Aspen Valley Hospital District d/b/a Aspen Valley Hospital did not have a neurosurgeon on staff or on-call.

21.     Plaintiff Tamar Kellner was admitted to the ICU at Aspen Valley Hospital District d/b/a Aspen Valley Hospital in the afternoon of March 20, 2009.

22.     At or around 6:20 p.m., Tamar Kellner was assessed by Mary Francis Powell, R.N., who noted that the patient could not remember the ski fall and had a headache with a pain rated 3/10.

23.     At or around 7:49 p.m., Cindy Doss, R.N. noted Tamar Kellner's complaints of frontal headache with a pain rating of 5/10, nausea and vomiting.

4

24.     At or around 7:55 p.m., Mary Francis Powell, R.N. noted Ms. Kellner felt hot and anxious and requested an Ativan IV.  Dr. Schultz was updated and an Ativan order was obtained and patient vomited.

25.     At or around 11:20 p.m., Tamar Kellner was awakened for neuro assessment. Ms. Kellner was noted to be oriented to person but unable to tell where she was.  Speech was noted to be thick and she was unable to make out some words.

26.     At or around 12:30 a.m. on March 21, 2009, the nursing supervisor was informed of subtle changes on Ms. Kellner's neuro status.  Neuro assessment was reportedly repeated with the nursing supervisor.  It was noted that Ms. Kellner remained confused as to place, was slow to follow simple commands and her speech was garbled at times.

27.     At or around 12:44 a.m., Ms. Kellner was awakened for a neuro exam.  It was then noted that she was oriented to person and place, but not year.

28.     At or around 1:03 a.m., Vitamin K 5 mg was ordered "now" by Dr. Schultz.

29.     At or around 1:06 a.m., Ms. Kellner vomited.  It was noted that her neuro exam waxed/waned.  Dr. Schultz was notified of lab results and neuro status.  Dr. Schultz then requested head CT, but stated that it was okay to wait until a.m. for the scheduled CT.

30.     At or around 1:20 a.m., a CT scan was ordered now by Dr. Schultz.

31.     At or around 1:25 a.m., Ms. Kellner was noted to be more somnolent and withdrawing to painful stimuli.  She reportedly gave no verbal response.  Dr. Schultz was paged and an order was obtained for head CT.

32.     At or around 1:40 a.m., a CT without contrast of the brain was taken of Ms. Kellner with an impression by Kevin Lampert, M.D. of significant worsening of subarachnoid

and subdural hemorrhage, significant midline shift from right to left with marked displacement of the septum pellucidum. Dr. Lampert also stated that there was almost complete effacement of the right lateral ventricle ambient cisterns and fourth ventricle did remain patent.

33.     At or around 1:45 a.m., Ms. Kellner was returned from CT scan and continued to decompensate. Dr. John Schultz was noted to be viewing her CT results from home. It was noted that he planned to administer fresh frozen plasma 10 units and transfer Ms. Kellner to St. Mary's Hospital.

34.     At or around 2:36 a.m., the Ms. Kellner was intubated and the house supervisor was present.

35.     At or around 2:49 a.m., Vitamin K 10 mg was given to Ms. Kellner, along with 4 units fresh frozen plasma.

36.     At approximately 3:45 a.m., Tamar Kellner was transferred to St. Mary's Hospital via Flight-for-Life.

37.     Plaintiff Tamar Kellner was admitted to St. Mary's Hospital Medical Center on March 21, 2009 via the emergency department.

38.     Dr. Lopez evaluated Tamar Kellner at St. Mary's Hospital Medical Center and noted that CT of her head at Aspen Valley Hospital District d/b/a Aspen Valley Hospital demonstrated a small amount of right frontal subarachnoid hemorrhage and a very small subdural hematoma and that he had recommended immediate reversal of her medically induced anticoagulation.

39.     On March 21, 2009 at 5:51 a.m., Tamar Kellner was taken for a right craniotomy with evacuation of subdural hematoma and placement of intracranial pressure monitor performed by John A. Lopez, M.D.

40.     Tamar Kellner was discharged from St. Mary's Hospital Medical Center on April 3, 2009 with a diagnosis of: (a) closed head injury due to skiing accident complicated by a subdural hematoma requiring craniotomy; (b) associated right temporoparietal infarct; and (c) complication of anticoagulation and respiratory failure requiring intubation and mechanical ventilation.

41.     Following the hospitalizations, Tamar Kellner has continued to suffer severe cognitive deficits, right hemiparesis and spasticity, sleep disturbance and mood lability due to brain injury related to her subdural hematoma.

42.     While under the care and treatment of each of the Defendants, Plaintiff Tamar Kellner was cared for and treated in a negligent fashion.  As a result of the brain injury, Tamar Kellner, among other things, is unable to work and has been unable to do so since March of 2009.

43.     Plaintiff, Tamar Kellner's brain injury is permanent and irreversible.

## IV.  FIRST CLAIM FOR RELIEF
### (Medical Negligence – John F. Schultz, M.D.)

44.     Plaintiff incorporates Paragraphs 1 through 43 herein by reference.

45.     Defendant John F. Schultz was negligent in his care and treatment of Tamar Kellner.

39.     On March 21, 2009 at 5:51 p.m., Tamar Kellner was taken for a right craniotomy with evacuation of subdural hematoma and placement of intracranial pressure monitor performed by John A. Lopez, M.D.

40.     Tamar Kellner was discharged from St. Mary's Hospital Medical Center on April 3, 2009 with a diagnosis of: (a) closed head injury due to skiing accident complicated by a subdural hematoma requiring craniotomy; (b) associated right temporoparietal infarct; and (c) complication of anticoagulation and respiratory failure requiring intubation and mechanical ventilation.

41.     Following the hospitalizations, Tamar Kellner has continued to suffer severe cognitive deficits, right hemiparesis and spasticity, sleep disturbance and mood lability due to brain injury related to her subdural hematoma.

42.     While under the care and treatment of each of the Defendants, Plaintiff Tamar Kellner was cared for and treated in a negligent fashion.  As a result of the brain injury, Tamar Kellner, among other things, is unable to work and has been unable to do so since March of 2009.

43.     Plaintiff, Tamar Kellner's brain injury is permanent and irreversible.

## IV.  FIRST CLAIM FOR RELIEF
### (Medical Negligence – John F. Schultz, M.D.)

44.     Plaintiff incorporates Paragraphs 1 through 43 herein by reference.

45.     Defendant John F. Schultz was negligent in his care and treatment of Tamar Kellner.

46.     With respect to his care and treatment of Tamar Kellner, Defendant John F. Schultz, M.D. owed a duty to exercise that degree of care, skill, caution, diligence and foresight exercised by and expected of physicians in similar situations.

47.     Defendant John M. Schultz, M.D. deviated from the standard of care and was negligent in his care and treatment of Tamar Kellner by:

   a.  Failing to transfer Tamar Kellner to an institution with neurosurgical capability following her initial evaluation at Aspen Valley Hospital District d/b/a Aspen Valley Hospital;

   b.  Admitting Tamar Kellner to Aspen Valley Hospital District d/b/a Aspen Valley Hospital when there was no neurosurgeon available at Aspen Valley Hospital District d/b/a Aspen Valley Hospital;

   c.  Failing to promptly order and administer fresh frozen plasma;

   d.  Failing to order the appropriate dosage of fresh frozen plasma;

   e.  Failing to promptly order and administer Vitamin K;

   f.  Failing to order and administer the appropriate dosage of Vitamin K;

   g.  Failing to order a follow up CT promptly;

   h.  Failing to recognize the urgent nature of Tamar Kellner's condition after initial evaluation at Aspen Valley Hospital District d/b/a Aspen Valley Hospital;

   i.  Failing to advise Tamar Kellner and her family that there was no neurosurgical capability or availability at Aspen Valley Hospital District d/b/a Aspen Valley Hospital; and

   j.  Relying on a substandard consultation by John A. Lopez, M.D.

48.     As a direct and proximate result of the negligence of Defendant John F. Schultz, M.D., Tamar Kellner has suffered significant and permanent injuries and damages including

permanent physical and cognitive impairment and disfigurement, seizures, emotional stress, mental anguish and physical suffering. Her injuries have been and will continue to be disabling and humiliating. The injuries she has suffered are permanent. Plaintiff Tamar Kellner has been forced to spend monies and will spend monies in the future for medicine, doctors' fees, prescriptions, hospital care, x-rays, physical therapy, medical procedures, rehabilitation, educational care and long-term care and assistance. Plaintiff Tamar Kellner has suffered a loss of ability to enjoy a full useful and normal life. Plaintiff Tamar Kellner has suffered a loss of earning capacity and a loss of home and family care services past and future as a direct and proximate result of the negligence of Defendant John F. Schultz, M.D.

49.     Plaintiff Tamar Kellner will suffer future economic damages brain injury and dysfunction, impairment of motor and speech, physical impairment, physical disfigurement, emotional distress, mental anguish, and physical suffering. Ms. Kellner's injuries have been and will continue to be permanent, disabling and humiliating. Ms. Kellner has suffered and will continue to suffer economic damages for the extraordinary medical, psychological, life care, educational, and essential service expenses associated with her injuries, as well as non-economic damages for emotional distress, anguish, inconvenience, and impairment of quality of life.

50.     As a direct and proximate result of the negligence of Defendant John F. Schultz, M.D., Plaintiff Tamar Kellner will suffer future economic damages, has suffered past economic damages, will suffer future non-economic damages, has suffered past non-economic damages, will suffer future disfigurement and physical impairment damages, and has suffered past disfigurement and physical impairment damages. Plaintiff will make a claim for all costs and interest allowable under applicable law.

## V.  SECOND CLAIM FOR RELIEF
### (Medical Negligence – John A. Lopez, M.D.)

51.     Plaintiff incorporates Paragraphs 1 through 50 herein by reference.

52.     Defendant John A. Lopez was negligent in his care and treatment of Tamar Kellner.

53.     With respect to his care and treatment of Tamar Kellner, Defendant John A. Lopez, M.D. owed a duty to exercise that degree of care, skill, caution, diligence and foresight exercised by and expected of physicians in similar situations.

54.     Defendant John A. Lopez, M.D. deviated from the standard of care and was negligent in his care and treatment of Tamar Kellner by:

a. Failing to order the transfer of Tamar Kellner to St. Mary's Hospital for in person neurosurgical evaluation following his consultation on her care and treatment in the afternoon of March 20, 2009;

b. Failing to ensure the appropriate and timely dosage of fresh frozen plasma;

c. Failing to ensure the appropriate and timely dosage of Vitamin K;

d. Providing a negligent consultation to John F. Schultz, M.D. and/or other providers at Aspen Valley Hospital District d/b/a Aspen Valley Hospital; and

e. Failing to recognize the urgent nature of Tamar Kellner's condition after initial consultation.

55.     As a direct and proximate result of the negligence of Defendant John A. Lopez, M.D., Tamar Kellner has suffered significant and permanent injuries and damages including permanent physical and cognitive impairment and disfigurement, seizures, emotional stress, mental anguish and physical suffering.  Her injuries have been and will continue to be disabling

10

and humiliating.  The injuries she has suffered are permanent.  Plaintiff Tamar Kellner has been forced to spend monies and will spend monies in the future for medicine, doctors' fees, prescriptions, hospital care, x-rays, physical therapy, medical procedures, rehabilitation, educational care and long-term care and assistance.  Plaintiff Tamar Kellner has suffered a loss of ability to enjoy a full useful and normal life.    Plaintiff Tamar Kellner has suffered a loss of earning capacity and a loss of home and family care services past and future as a direct and proximate result of the negligence of Defendant John A. Lopez, M.D.

56.    Plaintiff Tamar Kellner will suffer future economic damages brain injury and dysfunction, impairment of motor and speech, physical impairment, physical disfigurement, emotional distress, mental anguish, and physical suffering.  Ms. Kellner's injuries have been and will continue to be permanent, disabling and humiliating.  Ms. Kellner has suffered and will continue to suffer economic damages for the extraordinary medical, psychological, life care, educational, and essential service expenses associated with her injuries, as well as non-economic damages for emotional distress, anguish, inconvenience, and impairment of quality of life.

57.    As a direct and proximate result of the negligence of Defendant John A. Lopez, M.D., Plaintiff Tamar Kellner will suffer future economic damages, has suffered past economic damages, will suffer future non-economic damages, has suffered past non-economic damages, will suffer future disfigurement and physical impairment damages, and has suffered past disfigurement and physical impairment damages.  Plaintiff will make a claim for all costs and interest allowable under applicable law.

## VI.  THIRD CLAIM FOR RELIEF
### (Medical Negligence – Aspen Valley Hospital District d/b/a Aspen Valley Hospital)

58.    Plaintiff incorporates Paragraphs 1 through 57 herein by reference.

11

59. On or about the March 20, 2009, Plaintiff Tamar Kellner placed herself under the care and treatment of Aspen Valley Hospital District d/b/a Aspen Valley Hospital for the care and treatment of her medical condition.

60. At all relevant times, Aspen Valley Hospital District d/b/a Aspen Valley Hospital had nursing personnel and nursing staff who were officers, agents, shareholders, employees or partners of Aspen Valley Hospital District d/b/a Aspen Valley Hospital acting within the scope of their employment or within their authority as agents of Aspen Valley Hospital District d/b/a Aspen Valley Hospital.

61. Aspen Valley Hospital District d/b/a Aspen Valley Hospital is responsible for the acts or omissions of its agents, employees, officers, directors, shareholders and/or partners including the nursing personnel and nursing staff including, but not limited to, Cindy Doss, R.N. and Mary Francis Powell, R.N. and nursing staff including those names, caring for Plaintiff Tamar Kellner during her March 20, 2009 admission.

62. Aspen Valley Hospital District d/b/a Aspen Valley Hospital, acting by and through its agents, employees, officers and directors including, but not limited to, registered nurses, certified nursing assistants, nurse practitioners, licensed practical nurses and other employees, all of whom were acting within the course and scope of their employment or within their authority as agents and employees of Aspen Valley Hospital District d/b/a Aspen Valley Hospital were negligent in their care and treatment of Plaintiff Tamar Kellner, including but not limited to the following:

    a. Failing to perform appropriate nursing assessments on Plaintiff Tamar Kellner;

    b. Failing to appreciate the urgent medical condition of Plaintiff Tamar Kellner;

    c.  Failing to have Plaintiff Tamar Kellner transferred to a hospital with neurosurgical capabilities;

    d.  Failing to have a CT scan taken of Tamar Kellner promptly;

    e.  Failing to follow applicable policies and procedures;

    f.  Failing to activate this chain of command;

    g.  Failing to take appropriate vital signs for a patient such as Tamar Kellner;

    h.  Failing to communicate the urgent condition of Tamar Kellner; and

    i.  Failing to advise Tamar Kellner that there were no neurosurgical capabilities or availability at Aspen Valley Hospital District d/b/a Aspen Valley Hospital.

63.    As a direct and proximate result of the negligence of Defendant Aspen Valley Hospital District d/b/a Aspen Valley Hospital, by and through its duly authorized agents and employees, Plaintiff Tamar Kellner has suffered significant and permanent injuries and damages including permanent physical and cognitive impairment and disfigurement, seizures, emotional stress, mental anguish and physical suffering.  Her injuries have been and will continue to be disabling and humiliating.  The injuries she has suffered are permanent.  Plaintiff Tamar Kellner has been forced to spend monies and will spend monies in the future for medicine, doctors' fees, prescriptions, hospital care, x-rays, physical therapy, medical procedures, rehabilitation, educational care and long-term care and assistance.  Plaintiff Tamar Kellner has suffered a loss of ability to enjoy a full useful and normal life.   Plaintiff Tamar Kellner has suffered a loss of earning capacity and a loss of home and family care services past and future as a direct and proximate result of the negligence of Defendant Aspen Valley Hospital District d/b/a Aspen Valley Hospital.

64.     Plaintiff Tamar Kellner will suffer future economic damages brain injury and dysfunction, impairment of motor and speech, physical impairment, physical disfigurement, emotional distress, mental anguish, and physical suffering.  Ms. Kellner's injuries have been and will continue to be permanent, disabling and humiliating.  Ms. Kellner has suffered and will continue to suffer economic damages for the extraordinary medical, psychological, life care, educational, and essential service expenses associated with her injuries, as well as non-economic damages for emotional distress, anguish, inconvenience, and impairment of quality of life.

65.     As a direct and proximate result of the negligence of Defendant Aspen Valley Hospital District d/b/a Aspen Valley Hospital, Plaintiff Tamar Kellner will suffer future economic damages, has suffered past economic damages, will suffer future non-economic damages, has suffered past non-economic damages, will suffer future disfigurement and physical impairment damages, and has suffered past disfigurement and physical impairment damages. Plaintiff will make a claim for all costs and interest allowable under applicable law.

WHEREFORE, Plaintiff Tamar Kellner respectfully prays for compensatory damages in her favor and against Defendants in an amount to be determined by the trier of fact, interest from the date of filing, pre-judgment and post-judgment interest as allowed by law, witness fees, filing fees, deposition expenses, attorneys fees, and for such other and further relief as the Court may deem appropriate and just including all costs.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully submitted this 18th day of March, 2011.

Respectfully submitted,

LEVENTHAL, BROWN & PUGA, P.C.

By:   /s/ Jim Leventhal
      Jim Leventhal
      Isobel S. Thomas
      Molly Greenblatt
      950 South Cherry Street, Suite 600
      Denver, Colorado 80246
      (303) 759-9945
      (303) 759-9692 – Fax
      jim@leventhal-law.com
      ithomas@leventhal-law.com
      mgreenblatt@leventhal-law.com
      *Attorneys for Plaintiff*

**Plaintiff's Address:**
3301 Bridle Ridge Lane
Stevenson, Maryland 21153