IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-00688-MSK

TAMAR KELLNER,

    Plaintiff,

v.

JOHN F. SCHULTZ, M.D.; JOHN A. LOPEZ, M.D.;
and ASPEN VALLEY HOSPITAL DISTRICT
d/b/a ASPEN VALLEY HOSPITAL

    Defendants.

---

**PLAINTIFF'S MOTION FOR ORDER APPROVING SETTLEMENT
AGREEMENT AND TO COMPEL PERFORMANCE,
AND FOR OTHER RELIEF**

---

Plaintiff TAMAR KELLNER, through her counsel, respectfully submits this Motion for Order Approving Settlement and to Compel Performance, and for Other Relief, and states as follows:

**Certificate of Conferral Pursuant to D.C.COLO.LCivR. 7.1**

The undersigned counsel certifies that he conferred with opposing counsel prior to filing this motion. Opposing counsel for John F. Schultz, M.D., (Doug Wolanske) does not oppose submitting this matter to the Court but opposes the relief requested by the Plaintiff.

**Background**

    1.    Plaintiff has reached settlements with all Defendants in this case.

    2.    Plaintiff previously filed stipulations for dismissal, with prejudice, of her claims against two of the Defendants, John A. Lopez, M.D. and Aspen Valley

Hospital District d/b/a Aspen Valley Hospital, pursuant to Fed.R.Civ.P. 41(a)(2). The stipulation for dismissal as to Dr. Lopez (**Doc. 100**) was filed on January 16, 2014. The stipulation for dismissal as to Aspen Valley Hospital (**Doc. 101**) was filed on January 17, 2014.

3. After having reached a settlement with the Defendant, John F. Schultz, M.D., there were disagreements regarding the proper issuance of the settlement check and indemnification of Dr. Schultz and his liability insurer concerning a Medicare lien.

4. The specific disagreements are as follows:

a. **Names on settlement check; Co-payees:** Dr. Schultz's liability insurer (COPIC) -- not a party to this action -- insists on having two settlement checks, with one of the checks made payable to the Plaintiff *and* Medicare as co-payees. Plaintiff opposes putting Medicare as a co-payee on the settlement check because the settlement was between the Plaintiff and Dr. Schultz and the settlement proceeds belong to the Plaintiff – not to Medicare, not to Dr. Schultz, and not to Dr. Schultz's liability insurer.

b. **Indemnification:** Dr. Schultz's liability insurer insists that the Plaintiff agree to indemnify Dr. Schultz and COPIC against the Medicare lien as a condition to issuing a settlement check without Medicare as a co-payee. Plaintiff agrees she is responsible to pay the Medicare lien out of the settlement proceeds; however, Plaintiff did not and will not agree to indemnify Dr. Schultz or COPIC.

5. Plaintiff will present the affidavit of Plaintiff's counsel Jim Leventhal at the hearing on this matter. The affidavit must be filed under seal, because it contains confidential information regarding the terms of the settlement. The affidavit establishes that a binding agreement to settle exists, and that Defendant Schultz is now attempting to alter or amend the agreement to include additional terms and conditions.

6. Plaintiff intends to resolve all liens, including the Medicare lien; however, Plaintiff did not agree to the additional terms now demanded, which were unilaterally imposed by Dr. Schultz's liability insurer *after* the case was settled.

7. The parties settled the case upon the agreement that the Plaintiff would release the Defendants from liability and accept responsibility to pay the Medicare lien after receiving the settlement proceeds. The disagreements outlined above in paragraph 4(a) and (b) were not negotiated and were never even mentioned during the settlement negotiations. The additional items are post-contract terms that Dr. Schultz's liability insurer is attempting to coerce the Plaintiff and Plaintiff's counsel into accepting.

8. The release/settlement agreement tendered by Dr. Schultz's liability insurer is attached as **Exhibit 1**.[1] This document was executed by Plaintiff and a copy returned to Dr. Schultz's counsel January 15, 2014. This document does not include an indemnification provision. After the signed settlement agreement was returned to Dr. Schultz's counsel, COPIC refused to comply with its terms,

---

[1] The exhibit has been redacted to remove the reference to the amount of the settlement.

3

and insisted on altering the agreement to either include Medicare as a co-payee on the settlement check, or else to require Plaintiff to indemnify it. To resolve the dispute, Plaintiff proposed to revise the agreement to include the same terms and conditions relating to the Medicare obligation as those agreed to with Defendant Aspen Valley Hospital. The proposed revised terms are attached as **Exhibit 2**. COPIC refused to accept the proposed revisions.

### THE PARTIES ENTERED INTO A LEGALLY BINDING SETTLEMENT AGREEMENT.

9. "Issues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law." *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004). A settlement agreement is a contract to end judicial proceedings. *Recreational Dev. Co. v. Am. Constr. Co.*, 749 P.2d 1002 (Colo. App. 1987); *DiFrancesco v. Particle Interconnect Corp.*, 39 P.3d 1243, 1247 (Colo. App. 2001). Under Colorado law, a court may summarily enforce a settlement agreement if it is undisputed that a settlement exists. *Goltl v. Cummings,* 380 P.2d 556 (1963); see also *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993) ("A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it.").

10. The public policy of this state clearly favors voluntary agreements to settle legal disputes. *Colorado Ins. Guar. Ass'n v. Harris*, 827 P.2d 1139, 1142 (Colo. 1992) (en banc); *Davis v. Flatiron Materials Co.*, 511 P.2d 28, 32 (Colo. 1973) (en banc); see also *Copper Mountain, Inc. v. Poma of Am., Inc.*, 890 P.2d

100, 106 (Colo. 1995) (important public policy exists in favor of resolution of disputes).

11. No one seriously disputes that the Plaintiff and Dr. Schultz settled the case upon the agreement that the Plaintiff would release Dr. Schultz from liability and accept responsibility to pay the Medicare lien after receiving the agreed to settlement proceeds. Thus, there is a legally binding settlement agreement pursuant to Colorado law, which this Court has the jurisdiction and power to summarily enforce.

### DISPUTE REGARDING LISTING MEDICARE AS CO-PAYEE ON THE SETTLEMENT CHECK

12. As outlined above, Dr. Schultz's liability insurer insists on having two settlement checks, with one of the checks made payable to the Plaintiff **and** Medicare as co-payees, or in the alternative on requiring that Plaintiff indemnify it against any and all costs associated with any action or proceeding against it by Medicare to enforce its lien.

13. COPIC's post-contract demand is purportedly based on a Georgia case, *Hearn v. Dollar Rent A Car, Inc.*, 315 Ga. App. 164, 726 S.E.2d 661 (Ga. Ct. App. 2012).

14. In *Hearn*, a trial court in Georgia found that an agreement by the parties not to list Medicare as a co-payee on the settlement check was void as against public policy. On appeal, however, the state appellate court in Georgia disagreed, stating as follows:

> There are no Georgia cases addressing this issue [of whether public policy precludes enforcement of an agreement to omit Medicare as a co-payee on a settlement

5

check, when both parties have knowledge that Medicare has a right to seek reimbursement], and few cases from other jurisdictions touch upon it. One court has enforced a settlement agreement providing that Medicare would not be listed as a payee. See *Wright v. Liberty Med. Supply*, 2011 U. S. Dist. LEXIS 81621 (D. S.C. 2011). See also *Riccardi v. Strunk*, 2010 Conn. Super. LEXIS 186 (D. New London, Case No. CV085008671, decided January 22, 2010) (nothing in settlement agreement authorized insurer to add Medicare as a payee on check). Other courts have concluded that federal law does not require an insurance company to include Medicare as a payee. *Tomlinson v. Landers*, 2009 U. S. Dist. LEXIS 38683, *16 (M.D. Fla. 2009). See also *Wisinski v. American Commerce Group*, 2011 U. S. Dist. LEXIS 320 (III) (A) (2) (c) (N.D. Pa. 2011) (insurer's insistence that Medicare be listed as payee on check when plaintiff agreed to indemnify against any Medicare claims supported bad faith claim against insurer).

As one court has noted,

> there is no authority for an insurer's insistence that it protect a governmental agency's lien by making that agency a co-payee on a check tendered in payment of a judgment or settlement. To the contrary, the recent case of *Zaleppa v. Seiwell*, 2010 PA Super 208, 9 A.3d 632 (Pa. Super. 2010), stands for the proposition that, absent express authorization, private parties may not assert the interests of the government (in that case, Medicare) in a post-trial motion or any phase of litigation. Generally, putting an agency's name on a check as a co-payee is neither authorized or required under federal or state law, and quite obviously, is not an efficient way to resolve personal injury lawsuits. …
>
> While an insurer has a responsibility to assure that governmental agency liens are taken into account, such responsibility is generally discharged by obtaining a written commitment by the plaintiff, either in a release document or in an independent document, to be responsible for the payment of all such liens. …

*McBride v. Brown*, 2011 Conn. Super. LEXIS 830 (D. New Haven, Case No. CV085021216S, decided April 4, 2011).

6

> In the limited context of bad faith failure-to-pay claims against insurance companies, some courts have determined that, in the absence of an explicit agreement, it is reasonable for an insurer to list Medicare as a payee on a settlement check. See *Porter v. Farmers Ins. Co.*, 2012 U. S. Dist. LEXIS 9862 (II) (B) (B) (3) (N.D. Fla. 2012) (reasonable for insurer to initially list Medicare a co-payee on UM benefits check before issues regarding Medicare claim resolved); *Wilson v. State Farm &c. Ins. Co.*, 795 FSupp.2d 604, 607 (III) (W.D. Ky. 2011) (no bad faith when insurer sought to make Medicare a payee on check before paying limits of UM policy); *Lewis v. Allstate Ins. Co.*, 2006 Tex. App. LEXIS 2055 (Tex. Ct. App. 2006) (insurer did not breach obligation to pay UM benefits by listing Medicare as co-payee on check).
>
> After reviewing and considering the Medicare reimbursement statutes and regulations relevant to the specific facts of this case, *we conclude that public policy does not preclude a court from enforcing an agreement to omit Medicare as a co-payee on a settlement check where, as here, the plaintiff signed a release that acknowledged her responsibility to pay any Medicare claim and agreed to indemnify the released parties.* [Footnote omitted]. We express no opinion as to whether public policy would be violated in the absence of an express acknowledgment of liability and/or an indemnity agreement.

*Hearn*, 315 Ga. App. at 172-74, 726 S.E.2d at 667-68 (emphasis added).

15. Thus, contrary to COPIC's belief, the Georgia case it cites actually refused to find that public policy required Medicare to be listed as a co-payee on a settlement check.[2]

---

[2] Notably, the explicit public policy of this state is to prevent insurers from frustrating and delaying settlements of personal injury claims by utilizing this type of tactic. Colo. Rev. Stat. § 10-1-135(4)(b) provides that "[a] third party shall not include a payer of benefits that is claiming repayment or reimbursement pursuant to subsection (3) of this section

7

## DISPUTE REGARDING INDEMNIFICATION PROVISION

16. Dr. Schultz's liability insurer insists that the Plaintiff agree to indemnify Dr. Schultz and COPIC against the Medicare lien or claim. Plaintiff already specifically agreed to acknowledge in the release/settlement agreement that she is responsible to pay Medicare. Plaintiff and Plaintiff's counsel did not agree to the indemnification provision demanded by COPIC **after** the parties reached a settlement. Defendant cites no authority for imposing a unilateral obligation to indemnify released parties against Medicare claims and, based on Plaintiff's counsel's legal research and consultation with a Medicare lien expert, there is no such authority.

17. Therefore, the Plaintiff seeks an Order approving the settlement agreement with Dr. Schultz and to compel performance.

18. In particular, Plaintiff seeks an Order directing the parties to execute and perform the release/ settlement agreement without the additional terms and conditions that were not negotiated.

19. In addition, Plaintiff requests the Court to amend the case caption to accurately represent the remaining Defendant, Dr. Schultz, following entry of the Court's orders for partial dismissal with prejudice as to Dr. Lopez and Aspen Valley Hospital.

20. Finally, Plaintiff requests the Court grant an Order imposing sanctions pursuant to 28 U.S.C. §1927[3] and charging any additional or future

---

as a co-payee on any check or draft in payment of a settlement with or judgment for or on behalf of the injured party."

[3] Under §1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the

costs of proceedings to enforce the settlement agreement with Dr. Schultz against opposing counsel for the Defendant.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order: (1) approving the settlement between the Plaintiff and Defendant Dr. Schultz; (2) directing the parties to perform the release/settlement agreement without the referenced terms that were not negotiated; (3) enforcing the settlement agreement; (4) amending the case caption; and (5) imposing sanctions pursuant to 28 U.S.C. §1927 and charging any additional or future costs of the proceeding against opposing counsel for the Defendant.

Respectfully submitted,

Date: January 20, 2014			*s/ William J. Lamping*
					Jim Leventhal
					William J. Lamping
					LEVENTHAL, BROWN & PUGA, P.C.
					950 S. Cherry Street, Suite 600
					Denver, CO 80246
					(303) 759-9945
					(303) 759-9692
					E-mail: jim@leventhal-law.com
					          wlamping@leventhal-law.com
					ATTORNEYS FOR PLAINTIFF

---

excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." Section 1927 focuses on whether an attorney's conduct "imposes unreasonable and unwarranted burdens on the court and opposing parties." *Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987) (en banc). "Sanctions under § 1927 are appropriate when an attorney acts recklessly or with indifference to the law. They may also be awarded when an attorney is cavalier or bent on misleading the court; intentionally acts without a plausible basis; [or] when the entire course of the proceedings was unwarranted." *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1278 (10th Cir. 2005) (alteration in original) (citation omitted) (internal quotation marks omitted).

9

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 20th day of January, 2014, a true and correct copy of the foregoing was electronically served using the CM/ECF system or sent via U.S. Mail to all other counsel or parties of record:

| | |
|---|---|
| Aaron P. Bradford, Esq.<br>Maxwell N. Shaffer<br>Lathrop & Gage, LLP<br>950 17th Street, Suite 2400<br>Denver, CO 80202<br>Email: abradford@lathropgage.com<br>       mshaffer@lathropgage.com | Douglas C. Wolanske<br>Ann Thompson<br>Faraci Wolanske, LLC<br>1512 Larimer Street, Suite 1050<br>Denver, Colorado 80202<br>Email: dwolanske@fw-llc.com<br>       athompson@fw-llc.com |

David J. Nowak
White and Steele, P.C.
600 Seventeenth Street, Suite 600N
Denver, CO 80202
Email: dnowak@wsteele.com

                                                       By:  *s/ Alexis Austin*

# EXHIBIT 1

## RELEASE AND SETTLEMENT OF CLAIM

For the sole consideration of

I, Tamar Kellner ("Releasor"), which payment is made on account of wrongful death, do hereby release, acquit, and forever discharge John Schultz, M.D. ("Releasee"), his attorneys, heirs executors, administrators, principals, employees, representatives, agents, assigns and successors, from any and all actions, causes of action, claims and demands, damages, costs, loss of services, loss of wages, expenses and compensation on account of or in any way growing out of any and all injuries and damages both known and unknown, including but not limited to emotional, psychiatric, cognitive and physical injuries and their consequences, both known at the present time or which may become known at any time in the future, which have occurred or which may occur in the future, all in connection with the claims which are or could have been the subject of the litigation entitled Tamar Kellner v. John F. Schultz, M.D., et al., Civil Action No. 11CV00688, In the United States District Court for the District of Colorado.

I agree that the payment which I have received is meant to and does include full and complete payment for any and all additional costs, obligations and expenses, and that I agree to assume, resolve and discharge all outstanding liens, subrogated or assigned claims paid for by any third party or third party insurance carrier to include claims for all medical, psychological, hospital, nursing or other care and treatment, and related services, supplies, drugs, medication, and the like. I understand that I and not the Releasees will be responsible for satisfaction, resolution or discharge of any such

claims or interests. ~~I affirmatively certify that I am not now nor have I ever been a Medicare beneficiary.~~ TL

It is further expressly recognized that there may be future known risks and unknown risks, injuries and complications perhaps permanent in nature arising from the medical treatment or lack thereof, that there may be consequences of known or unknown injuries which I do not and cannot anticipate at this time, but I do however fully intend to release and do hereby release any claim for future unknown risks, injuries, complications, and consequences of known or unknown injuries.

It is specifically acknowledged by me that Releasees have not made any representations, comments, promises or other statement concerning potential tax consequences of this settlement, or public or private eligibility for any benefits, government or otherwise. Further it is acknowledged that Releasees have made no representations, inducements, comments or other statements regarding any claim or lien of subrogation that may be asserted by any health insurer. The extent any comments may have been made, I hereby warrant that I did not rely on any such comments in making any decision to execute this Release and Settlement of Claim, and further that I have consulted, and been advised by, my attorneys, Jim Leventhal and the firm of Leventhal, Brown & Puga, P.C., with regard to any such subrogation lien or claim and have relied solely on their advice and counseling in that regard.

The parties will execute and file with the Court, a Stipulated Motion to Dismiss with Prejudice requesting that the Court dismiss the Litigation with prejudice, with each

party to pay their own costs and attorneys' fees.

It is specifically acknowledged that payment and settlement as set forth above is neither an admission of liability nor an admission of breach of any duty by any of the Releasees as alleged in the Litigation.

It is expressly warranted by me that no promise or inducement has been offered except as herein set forth; that this release is executed without reliance upon any statement or representation of the person or parties released, or their representatives, concerning the nature and extent of the injuries, damages and/or legal liability therefore; that acceptance of the consideration set forth herein is in full accord and satisfaction of a disputed claim for which liability is expressly denied.

Releasor believes that the payment referenced above is properly classified as damages in settlement of Releasor's civil tort claims. Releasor understands that it is her decision as to how the settlement is characterized. Releasees cannot and do not make any representations as to the tax consequences of the settlement. In the event any state and/or federal authority determines any part of the payments to the Releasor, as outlined above, are taxable, Releasor agrees to be solely responsible and liable for payment of all such taxes, including interest and penalties.

It is expressly agreed as a term and condition of this settlement that none of the parties to this Release and none of the attorneys involved in the Release or the employees of such persons shall undertake publication or other dissemination of the amount of the settlement except as required by law or for the limited purpose of making

such financial companies, lending institutions, and governmental agencies. Any such disclosure shall be made in such a manner so as not to result in the public dissemination of such information. It is expressly agreed that this confidentiality clause is a separately bargained-for provision and that consideration of one hundred ($100) dollars is paid and consideration for this provision.

This Release shall be governed and construed and interpreted in accordance with the laws of the State of Colorado. This settlement resolves all claims, whether or not included in the pending civil action, between Releasor and Releasees and releases Releasees from any further claims.

These settlement terms are intended to form a binding agreement, enforceable in court, even though the settlement envisions that other settlement documents will be prepared and executed in order to complete the settlement. This document may be submitted to a court to prove the existence of the settlement or for enforcement. The parties intend this settlement agreement to be a final written document which qualifies as an exception to the confidentiality provision found at C.R.S. §13-22-307(2).

Facsimile and pdf file signatures will be as binding as original signatures. Each person signing as a party representative has the authority to bind the party or parties for whom such person acts.

Signed and sealed this \_14th\_ day of January, 2014

_____
Tamar Kellner

STATE OF ~~COLORADO~~ Maryland )
                                ) SS.
COUNTY OF Baltimore )

SUBSCRIBED AND SWORN to before me this \_14\_ day of \_Jan_____, 2014, by Tamar Kellner.

WITNESS my hand and official seal.
My Commission expires: \_06/17/2015\_

_____
NOTARY PUBLIC

APPROVED:

By:_____
James Leventhal
William Lamping
Leventhal Brown & Puga, P.C.
950 S. Cherry Street, Suite 600
Denver, CO 80246

[Notary seal: KIA DOWNS, NOTARY PUBLIC, MY COMMISSION EXPIRES 06/17/2015, BALTIMORE CITY]

# EXHIBIT 2

**3.      Medicare Obligation.**

Releasor and Releasee (collectively, the "settling parties") hereby acknowledge the following:

a.      Under the Medicare Secondary Payer ("MSP") Act, 42 U.S.C.§ 1395y(b), and its accompanying regulations (the "MSP provisions"), the Centers for Medicare and Medicaid Services (the "CMS") in certain circumstances may have an obligation to seek reimbursement of Conditional Payments made by the Medicare Program (Title XVIII of the Social Security Act)(the "Medicare Program") on claims for items and services relating to injuries allegedly sustained by Tamar Kellner;

b.      Releasor is in the best position to determine if any reimbursement obligation exists, based on Tamar Kellner's entitlement (or lack thereof) to Medicare Program benefits and Tamar Kellner's actual receipt of such benefits, and, if there is a reimbursement obligation, to ensure that the Medicare Program's interests are properly considered and discharged. Releasor covenants and agrees to do so as a term of this settlement;

c.      If there is a reimbursement obligation to the Medicare Program, Releasor is responsible under the MSP provisions to verify, resolve and satisfy such obligation; and

d.      If Tamar Kellner is now or in the past has been enrolled in the Medicare Program, Releasee will report the settlement to the CMS pursuant to the MSP Act and regulations (even if Releasor does not agree that the evidence actually establishes liability for injuries allegedly sustained by Releasor or that there is any requirement to report the settlement to the CMS).

e.      The settling parties do not intend to shift responsibility for medical benefits to the Federal Government as any part of this settlement. Medicare may also assert a recovery claim, if appropriate, based on Conditional Payments made by Medicare within the meaning of 42 U.S.C. § 1395y(b)(2). Consequently, to comply with the applicable Federal regulations and to reasonably recognize Medicare's interest, Releasor represents that she agrees to satisfy any and all Medicare reimbursement obligations, subrogation interests or claims, as may be finally determined and/or compromised from the proceeds of the settlement funds.

f.      Releasor understands that it is a condition of this Release that she must repay any and all Conditional Payments that Medicare demands. Releasor further specifically instructs her attorneys to pay all amounts owed to Medicare related to this matter within the meaning of the MSP Act from the settlement proceeds.

Releasees shall issue a check for $xxx made payable to Tamar Kellner and Leventhal Brown and Puga, P.C.  Releasor accepts this as full payment for making this Release.  Releasor agrees that she will not seek anything further including any other payment from Releasee.  Releasor agrees to timely confirm the existence or non-existence of a Medicare claim on behalf of Tamar Kellner.  Releasor acknowledges and agrees that she has the sole responsibility to satisfy any Medicare claim relating to this Action.  Releasor agrees and will instruct her attorneys to hold

sufficient funds in trust for any and all liens. To the extent a Medicare claim exists, it shall be timely satisfied from the escrowed funds. Releasor further agrees to provide to Releasee written confirmation from Medicare (a) of the final claim amount and proof of satisfaction of same; or (b) that no claim exists, within fourteen (14) days of their receipt of same.

**4.     Future Allocations.**

In an effort to protect Medicare's interests, if any, the likelihood of future medical services and expenses have been taken into account by all parties to the Release, and the parties agree that Medicare's interests, if any, have adequately been considered. The parties to this Release agree that this Release is not intended to shift to Medicare the responsibility for payment of medical services and expenses, if any, related to the injuries or conditions that form the basis of this Action. Instead, the parties agree that this Release is intended to provide Releasor a lump sum payment in order to resolve a dispute between the parties, which will foreclose Releasees' responsibility for future payment of any and all medical services. Releasor understands and agrees that the risks and possible future effects of his/her injuries or conditions, including fear of same, are specifically bargained for, included and released by this Release. Releasor desires to enter into this Release to settle his/her claim according to the terms set forth in this Release.

Releasor acknowledges and agrees that she is solely responsible for the payment of any and all unpaid medical bills, as well as any and all future medical services and expenses, and that Releasee shall have no responsibility for same.

**5.     Resolution and other Liens**

To the extent that there are any liens or subrogation claims of any kind with respect to this Action, Releasor covenants to pay and satisfy such liens or claims, including, without limitation, any workers' compensation liens, health insurance liens, Social Security liens, no-fault liens, PIP liens, attorney's liens, and any liens or claims claimed by any healthcare provider, hospital, ambulance service, other medical provider, ERISA plan, Medicare or Medicaid related to this matter.